



USDC SDNY
DOCU...
EL... LY FILED
DOC #:_____
DATE FILED: APR 20 2015

**U.S. Department of Justice**

United States Attorney
Southern District of New York

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 15, 2015

**BY HAND—REQUEST TO FILE UNDER SEAL**

Hon. Alison J. Nathan
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    **United States v. Cheng Le**
            **15 Cr. 38 (AJN)**

Dear Judge Nathan:

      The Government respectfully writes to advise the Court of a potential conflict of interest presented by the representation of the defendant Cheng Le by Patrick Brackley, Esq. to aid the Court in fulfilling the inquiry obligation under United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).

      Le was arrested on December 23, 2014, and charged with Attempted Acquisition of a Biological Toxin, in violation of Title 18, United States Code, Sections 175(a) and 2. He was initially represented by the Federal Defenders of New York. Mr. Brackley informed the Government that he had been retained to represent Le on January 5, 2015. On January 20, 2015, a grand jury returned an Indictment charging Le with Attempted Acquisition of a Biological Toxin, and Use of a False Name in Furtherance of Unlawful Business, in violation of Title 18, United States Code, Section 1342.

      Based on conversations with Mr. Brackley, the Government understands that Mr. Brackley has been retained by Le's parents. The Government believes that the facts and circumstances of this case necessitate a Curcio inquiry because the interests of Le and his parents may diverge and constitute a potential conflict. See Amiel v. United States, Docket No. 98-2135, 2000 WL 378880, at *3 (2d Cir. April 13, 2000). Accordingly, the Government submits this letter to inform the Court more specifically of the nature of the potential conflict and to provide a list of proposed questions that the Government respectfully suggests be put to Le.

In particular, the Government respectfully requests that the Court ascertain whether Le is fully aware of the risks involved in the representation provided by Mr. Brackley, who may have divided loyalties, and determine whether Le is making a knowing and intelligent waiver of his right to conflict-free representation. The Government also respectfully requests that the Court inform Le of his right to have conflict-free counsel appointed cost-free to advise him on a potential waiver. If, after a full inquiry, the Court determines that Le has not knowingly waived this conflict, that the conflict is so egregious that no rational defendant could waive such a conflict, or that allowing Mr. Brackley to represent Le would not ensure that this case would be conducted within the ethical standards of the profession such that the case appears fair to all who observe it, then Mr. Brackley and other counsel retained by Le's parents should be disqualified.

## Discussion

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. See United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry and to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict of interest. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Moreover, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988).

In conducting an inquiry regarding a conflict, a court must first investigate the details of the attorney's interests "'to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" Rogers, 209 F. 3d at 143 (quoting Levy, 25 F.3d at 153).[1] The Second Circuit has set forth the requirements for a Curcio procedure in great detail:

> At such a hearing, the trial court (1) advises the defendant of his
> right to representation by an attorney who has no conflict of interest,

---

[1] In the Second Circuit, per se conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); see also Solina v. United States, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); United States v. Cancilla, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime). The Second Circuit has repeatedly and consistently refused to extend the per se rule beyond the two prescribed categories. Levy, 25 F.3d at 157 n.8 ("[W]e have repeatedly stressed the limited reach of the per se rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes."); see also United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001) ("[W]e have limited *per se* conflicts to [these] two instances"); Strouse v. Leonardo, 928 F.2d 548, 555 (2d Cir. 1991) ("[T]his court has repeatedly declined to extend the per se rule beyond the sort of egregious conduct present in Solina and Cancilla.") (internal quotation marks and citation omitted).

2

> (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

United States v. Perez, 325 F.3d 115, 119 (2d Cir. 2003).

An actual conflict is one that is so severe that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." Levy, 25 F.3d at 146; see also United States v. Lech, 895 F. Supp. 586, 589-90 (S.D.N.Y. 1995). As the Second Circuit has described it, an actual conflict exists when, "during the course of representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,'" or "when the attorney's representation to the defendant is impaired by loyalty owed a former client." United States v. Blau, 159 F.3d 68, 75 (2d Cir. 1998) (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993)). To show divergent interests, "[s]peculation is not enough." Triana v. United States, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). Where an actual conflict is found to exist, the Court must disqualify the attorney, Levy, 25 F.3d at 153, even if the defendant expresses a desire to waive his right to conflict-free counsel. As the Supreme Court has stated:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Wheat, 486 U.S. at 159 (holding that there was no error in declining petitioner's waiver of his right to conflict-free counsel and refusing to permit his proposed substitution of attorneys); see also United States ex rel. Stewart v. Kelly, 870 F.2d 854, 858 (2d Cir. 1989) (consent would not be dispositive given trial court's independent obligation to ensure a fair trial).

Conflicts that do not fall into the categories of per se conflicts or actual conflicts are described as potential conflicts. See, e.g., Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000). "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" Perez, 325 F.3d at 125 (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." Id. at 127. However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and to "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." Id. (quoting United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain

3

counsel of his choice despite a conflict, the court conducts a Curcio hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." Id.

In light of a district court's obligation to ensure that a defendant receives a fair trial, the court should conduct any necessary inquiry as to possible conflicts of interest "sooner rather than later," so that "any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." Rogers, 209 F.3d at 146. Though it is clearly preferable that such an inquiry be conducted pre-trial, at that point, it may be difficult to identify each of the "specific trial episodes in which the conflict" may come into play. Id. As the Honorable Michael B. Mukasey stated:

> The authority of Wheat makes clear that that part of the Levy test which involves an assessment of how serious the conflict is, must include not only actual but also potential conflicts, and must include as well both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts.

United States v. Rahman, 861 F. Supp. 266, 275 (S.D.N.Y. 1994). For this reason, "where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel." Stewart, 870 F.2d at 857; see also Wheat, 486 U.S. at 164 (holding that presumption in favor of petitioner's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict"); United States v. Zichettello, 208 F.3d 72, 104 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe"). Thus, "[i]n order to avoid lurking potential conflicts and to preserve the public's confidence in the integrity of the judicial system," district courts have discretion to reject a defendant's waiver of an actual or potential conflict. United States v. Oberoi, 331 F.3d 44, 52 (2d Cir. 2003) (citing Wheat, 486 U.S. at 162-63). Accord United States v. Rogers, 9 F.3d 1025, 1030-32 (2d Cir. 1993); United States v. Locascio, 6 F.3d 924, 931-35 (2d Cir. 1993). Even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver. United States v. Jones, 381 F.3d 114, 121 (2d Cir. 2004); United States v. Gonzales, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 2000).

Here, a potential conflict arises from the fact that Mr. Brackley is representing Le while being paid by Le's parents. Mr. Brackley's acceptance of payment from a third party could implicate divided loyalties and conflicting ethical obligations. See In re Grand Jury Subpoena Served upon Doe, 781 F.2d 238, 248 n. 6 (2d Cir.1986) (en banc) ("Accepting payment of clients' fees from a third party may subject an attorney to undesirable outside influence.").

In addition to the usual issues presented when defense counsel is retained by a third party, the Government has discussed with Mr. Brackley evidence which suggests that Le's parents may have been linked to his criminal activity. As set forth in the Complaint in which Le was initially charged, Le is alleged to have ordered a quantity of ricin concealed as a tablet within a pill bottle. See Dkt. 1 at ¶¶ 6(m)-(o). On or about December 18, 2014, law enforcement agents prepared a sham shipment of ricin (the "Sham Shipment"), which included a quantity of

4

sham ricin concealed in a pill bottle (the "Pill Bottle"). See id. ¶ 12. Le later retrieved and opened the Sham Shipment. See id. ¶¶ 14-16. As reflected in discovery produced in this case, during a recorded post-arrest statement, Le denied knowledge of ricin, but indicated, among other things, that he intended to forward the Pill Bottle to his father.

The Government respectfully submits that the above-described facts suggest a variety of scenarios that could present a conflict of interest to Mr. Brackley. Le's father could, for instance, be a criminal coconspirator of Le, with a vested interest in encouraging Mr. Brackley to advise Le to accept sole responsibility for the unlawful scheme. Alternatively, Le's father could have been an intended victim of Le's, who might have an interest in ensuring that Le receive a substantial sentence so as to avoid being threatened by Le in the future.

### IV.    Conclusion

In light of the situation outlined above, the Government respectfully requests that the Court conduct a hearing pursuant to the Second Circuit's ruling in United States v. Curcio to advise Le of his right to conflict-free representation and to inquire as to whether he understands the potential conflict. After advising the defendant of the potential risks inherent in Mr. Brackley's continued representation, the Government requests that the Court afford Le a reasonable time to digest and contemplate those risks. Curcio, 680 F.2d at 890. If Le subsequently informs the Court that he wishes to proceed with Mr. Brackley, the Government requests that the Court elicit a narrative response from Le designed to ascertain whether he is fully aware of the risks involved in the representation provided by Mr. Le, who may have divided loyalties, and determine whether Le is making a knowing and intelligent waiver of his right to conflict-free representation.

If, after a full inquiry, the Court determines that Le has not knowingly waived this potential conflict; that the conflict is so egregious that no rational defendant could waive such a conflict; or that allowing Mr. Brackley to represent the defendant would not ensure that this case would be conducted "within the ethical standards of the profession" such that the case appears "fair to all who observe [it]," then Mr. Brackley and other counsel retained by Le's parents should be disqualified from continued participation in this case. Wheat, 486 U.S. at 160. For the convenience of the Court, the Government is attaching a set of proposed questions to be put Le as

5

part of the Curcio inquiry. Given the sensitive facts outlined above, the Government respectfully requests that this letter be docketed under seal.

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                              By: /s/ Ilan Graff
                                  Ilan Graff/Andrew Beaty
                                  Assistant United States Attorneys
                                  (212) 637-2296/(212) 637-2198

cc:    Patrick Brackley, Esq. (by email)

---

The Government's request to schedule a Curcio hearing is GRANTED. The hearing shall be held on May 4, 2015 at 4:00 pm in Courtroom 906 of the Thurgood Marshall U.S. Courthouse. This order and the Government's April 15, 2015 letter are to be filed under seal.

SO ORDERED.

---

SO ORDERED: 4/14/15

HON. ALISON J. NATHAN
UNITED STATES DISTRICT JUDGE