# PATRICK J. BRACKLEY
−ATTORNEY AT LAW −
233 BROADWAY, SUITE 2370
NEW YORK, NY 10279
TEL. (212) 334-3736
FAX (212) 513-7068

February 18, 2016

**COURTESY COPY**

The Honorable Alison J. Nathan, U.S.D.J.
United States District Court
40 Foley Square
New York, N.Y. 10007

Re:  U.S. v. Cheng Le
     Dkt. # 15 Cr. 38 (ANJ)

Dear Judge Nathan:

     With respect to the recommendation of Pepper v. United States, ___ U.S. ____, 131 S.Ct. 1229, 1239-1240 (2011) that in selecting an appropriate sentence the Court be in possession of the fullest information possible concerning the defendant's life and characteristics." Id., at 1240, (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). I write to provide the Court supplemental materials I have gathered on Mr. Le's childhood and family background. I would draw the Court's attention to the sincere, if naïve, letter written by Mr. Le's parents. As I read it myself it struck me how much their now painful experience with their son echoes the result of recent research on the developing brain and juvenile justice, summaries of which I am also providing.

     As recognized in recent U.S. Supreme Court rulings which rely on that research as well as  "on common sense—on what "any parent knows," Miller v. Alabama, ___ U.S. ____, 132 S.Ct. 2455, 2464 (2012), "juveniles have diminished culpability and greater prospects for reform" and are thus "less deserving of the most severe punishments." Miller, 132 S.Ct. 2464  (quoting Graham v. Florida, 560 U.S. 48 ( 2010)).  The Supreme Court has recognized three principal distinctions between juveniles and adults:  (1) children have a lack of maturity and an underdeveloped sense of responsibility  which leads to recklessness, impulsivity, and heedless risk-taking, id. (quoting Roper v. Simmons, 543 U.S 551, 569 (2005);  (2) children are more vulnerable  to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings, id.; and  (3), a child's character is not as well formed as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity." Id. (quoting Roper at 570.

In <u>Roper</u>, the Court cited studies showing that only a relatively small proportion of adolescents who engage in illegal activity develop entrenched patterns of problem behavior. Id., at 570, 125 S.Ct. 1183 (quoting Steinberg & Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)). And in <u>Graham</u>, it noted that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"—for example, in "parts of the brain involved in behavior control." 560 U.S., at ——, 130 S.Ct., at 2026.  It reasoned that those findings— of transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's "moral culpability" and enhanced the prospect that, as the years go by and neurological development occurs, his " 'deficiencies will be reformed.' "

*Roper* and <u>Graham</u> emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. Because " 'the heart of the retribution rationale' " relates to an offender's blameworthiness, " 'the case for retribution is not as strong with a minor as with an adult.' " Graham, 560 U.S., at ——, 130 S.Ct., at 2028; Roper, 543 U.S., at 571. Nor can deterrence do the work in this context, because " 'the same characteristics that render juveniles less culpable than adults' "—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment. Graham, 560 U.S., at ——, 130 S.Ct., at 2028 (quoting Roper, 543 U.S., at 571, 125 S.Ct. 1183).  Neither should incapacitation justify draconian punishment because deciding that  a "juvenile offender forever will be a danger to society" would require "making a judgment that he is incorrigible"—but " 'incorrigibility is inconsistent with youth.' " 560 U.S., at ——, 130 S.Ct., at 2029

His parents' letter demonstrates that Mr Le has exhibited exceptional intelligence and talent since early childhood and his family worked hard to support him in realizing his great potential.  It also recognizes his immaturity.  When he came to the United States for college he was without that support and supervision for the first time and has clearly suffered for it, completely losing his way in the real world and retreating into that of the dark web.  Contrasting the photograph of a musical child prodigy with that of the 21- year old sitting behind a computer in a filthy room stacked high with garbage illustrate both Mr. Le's tragic fall from grace and the 500 words from Miller quoted above.

In sum, in formulating its sentence, I'd ask the Court to review this material and consider whether the recommended 15-year sentence is really necessary in circumstances where the Government was once offering a 5-year term.


    Respectfully submitted,


    s/ Patrick J. Brackley
    Patrick J. Brackley (PJB 6808)